*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1679**

Michael Adam Davis, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 6, 2026**
**Affirmed**
**Harris, Judge**

Dodge County District Court
File No. 20-CR-19-245

Michael Adam Davis, Rush City, Minnesota (pro se appellant)

Keith Ellison, Attorney General, Lisa Lodin, Assistant Attorney General, St. Paul, Minnesota; and

Paul Kiltinen, Dodge County Attorney, Mantorville, Minnesota (for respondent)

Considered and decided by Wheelock, Presiding Judge; Larson, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**HARRIS**, Judge

In this appeal from an order denying postconviction relief without an evidentiary hearing, appellant argues that his claims for ineffective assistance of trial and appellate

counsel were not procedurally barred and entitled him to an evidentiary hearing. Because we discern no abuse of discretion, we affirm.

## FACTS

In 2019, respondent State of Minnesota charged appellant Michael Adam Davis by amended complaint with four counts of criminal sexual conduct, including two counts of first-degree criminal sexual conduct while in a position of authority over a victim between 13 and 16 years of age, and one count of indecent exposure in the presence of a minor. The matter proceeded to a jury trial at which victim D.T testified, and Davis testified on his own behalf. The following is from Davis's petition and the transcripts of the underlying criminal proceedings. We include only those details necessary to understand the issues on appeal.

Victim D.T. lived with his mother, A.M.T.; his father, T.J.T.; and sister in Dodge Center. A.M.T. was a member of the Church of Jesus Christ of Latter-day Saints, where she later met Davis. At the time, Davis was a "leader" within the church. One day, after service, Davis told A.M.T. that he would be a "good mentor" for D.T. At the time, A.M.T. thought it was a good idea because D.T. would have another male "to look up to." A.M.T. understood that Davis and D.T. "were going to do Bible study."

D.T. first went to Davis's home in late December of 2018 and when D.T. returned home, A.M.T. learned that they did not do Bible study. Instead, D.T. and Davis played video games and nerf guns, played with Davis's rabbits, and talked.

D.T. testified about his visits to Davis's home. D.T. arrived early in the morning and spent the entire day with Davis. Davis stayed home most of the day and prepared food

2

for D.T.  After Christmas break, Davis gifted D.T. a cell phone and a pair of cowboy boots. D.T. testified that Davis gave him a key to enter his home and, on two or three occasions, D.T. spent the night at Davis's home.

D.T. also testified about the instances of sexual abuse by Davis.  He testified that he and Davis would wrestle, and Davis would touch him inappropriately, groping his butt and penis.  After the first incident of inappropriate touching, Davis asked D.T. to come over because he wanted "to show [him] a magic trick."  D.T. testified that he was on the couch when Davis instructed him to close his eyes and open his mouth, at which point Davis "put his penis in [D.T.'s] mouth."  D.T. described that this lasted "[f]ive minutes, but it felt like an eternity" and that Davis placed his penis "all the way" in his mouth.  On a separate day, Davis ordered D.T. to the upstairs bedroom, locked the bedroom door, and told D.T. to get on the bed.  Davis removed his and D.T.'s pants and unsuccessfully attempted to penetrate D.T.'s anus with his penis.

In February 2019, A.M.T. attended church with D.T., her daughter, and her mother-in-law.  After the service, A.M.T. was approached by other church members who shared concerns about D.T.'s well-being.  Following that conversation, the church's president scheduled a meeting with D.T. and Davis.  After that meeting, A.M.T. was going to bring D.T. home but he got angry and instead wanted to leave with Davis.  A.M.T. relented and let him leave with Davis, but she told Davis that he needed to bring D.T. "straight home."  A.M.T. left church with her daughter and mother-in-law.  After A.M.T. had been home for a while, she realized that Davis should have already arrived with D.T. at her home.  T.J.T.

drove to Davis's home to see if D.T. was there, but before he reached Davis's home, he discovered that law enforcement had stopped Davis a few blocks away.

The responding police officer testified that he observed D.T. move from the "center seat inside the vehicle over to the passenger seat," which indicated that he was not wearing a seatbelt. When the officer ran Davis's license and registration, he learned that Davis was a convicted sex offender in the State of Utah,[1] and he questioned whether Davis could have contact with D.T. Approximately 30 minutes into the traffic stop, A.M.T. arrived and the officer informed her that Davis was a convicted sex offender in Utah.

A jury found Davis guilty as charged. The district court convicted Davis on two counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct and sentenced him to concurrent prison sentences of 234 months for count 1, 360 months for count 2, and 70 months for count 3.

In February 2023, Davis filed a direct appeal, arguing that (1) the district court erroneously admitted evidence, (2) the state's discovery violations entitled him to a new trial, (3) he received ineffective assistance of trial counsel, (4) the evidence was insufficient to prove that he was in a position of authority, and (5) the district court erroneously calculated his criminal-history score. This court affirmed his convictions and sentence.

---

[1] In September 2006, the State of Utah convicted Davis of two counts of attempted forcible sex abuse: the first count occurred "on or about June 15, 2005," and the second occurred "during 2004," with both counts involving the same victim. These convictions would be considered fourth-degree criminal sexual conduct under Minnesota Statutes section 609.345, subdivision 1 (2004).

*See State v. Davis*, No. A23-0308, 2024 WL 2814441 (Minn. App. June 3, 2024), *rev. denied* (Minn. Oct. 15, 2024).

In June 2025, Davis filed a petition for postconviction relief. Davis asserted ineffective assistance of trial and appellate counsel on several grounds: (1) failing to develop the record; (2) failing to call a particular witness; (3) failing to raise prosecutorial misconduct; (4) failing to provide alibi evidence; (5) failing to adequately prepare Davis to testify on his own behalf; (6) failing to use exculpatory evidence and "beneficial rulings"; (7) failing to challenge the state's "potentially unlawful investigation"; and (8) failing to challenge the sentencing order. Davis also alleged ineffective assistance of appellate counsel for failing to argue prosecutorial misconduct, calling a witness, and preventing him from contributing to his own appeal.

The district court denied Davis's petition without a hearing. It determined that his claims of ineffective assistance of trial counsel were *Knaffla*-barred[2] because each of his claims were known to him at the time of the direct appeal but not raised. As it relates to his claims of ineffective assistance of appellate counsel, the district court determined that they were not *Knaffla*-barred but that Davis failed to allege facts that, if proven by a fair preponderance of the evidence, would entitle him to a new trial.

Davis appeals.

---

[2] *See State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976) (holding that when a direct appeal has been taken "all claims known but not raised[] will not be considered upon a subsequent petition for postconviction relief.").

**DECISION**

**I.      The district court did not abuse its discretion by summarily denying Davis's petition for postconviction relief.**

Under the postconviction statute, a defendant who has been convicted of a crime may petition the district court for postconviction relief "to vacate and set aside the judgment . . . or make other disposition as may be appropriate." Minn. Stat. § 590.01, subd. 1 (2024). But a "petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence." *Id.*; *see also Knaffla*, 243 N.W.2d at 741.

"We review the summary denial of a petition for postconviction relief for an abuse of discretion." *El-Shabazz v. State*, 984 N.W.2d 569, 573 (Minn. 2023). "A [postconviction] court abuses its discretion when it has exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Id.* (quotation omitted). The postconviction court's factual findings are reviewed for clear error, and its legal conclusions are reviewed de novo. *Id.* However, "[b]ecause claims of ineffective assistance of counsel are mixed questions of law and fact, we review the postconviction court's legal conclusions on such questions de novo." *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013).

Davis challenges the district court's denial of his petition for postconviction relief, arguing that (1) his claims of ineffective assistance of trial counsel were not *Knaffla*-barred, (2) he received ineffective assistance of appellate counsel, and (3) the district court erred in the process of evaluating his claims. We address these arguments in turn.

6

### A. Ineffective Assistance of Trial Counsel

The United States and Minnesota Constitutions guarantee a criminal defendant "the right to the effective assistance of counsel." *Taylor v. State*, 887 N.W.2d 821, 823 (Minn. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To succeed on an ineffective-assistance-of-counsel claim, Davis needed to satisfy the two-pronged *Strickland* test. *Strickland*, 466 U.S. at 687; *Peltier v. State*, 946 N.W.2d 369, 372 (Minn. 2020) (applying *Strickland* test to a postconviction petition alleging ineffective assistance of counsel). Under this test, Davis must show that (1) "his attorney's performance fell below an objective standard of reasonableness" and (2) "a reasonable possibility exists that the outcome would have been different, but for counsel's errors." *State v. Mosley*, 895 N.W.2d 585, 591 (Minn. 2017) (quotation omitted). If one of these prongs is not satisfied, we may dispose of the claim without considering the other prong. *Peltier*, 946 N.W.2d at 372.

"Once a direct appeal has been taken, all claims raised in that appeal, all claims known at the time of that appeal, and all claims that should have been known at the time of that appeal will not be considered in a subsequent petition for postconviction relief." *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007) (citing *Knaffla*, 243 N.W.2d at 741). The *Knaffla* bar "applies even in postconviction proceedings raising constitutional issues of criminal procedure." *Schleicher v. State*, 718 N.W.2d 440, 445 (Minn. 2006).

In his petition for postconviction relief, Davis argued that his trial counsel was ineffective because he failed to (1) present alibi evidence, (2) properly challenge the state's witnesses, (3) prepare Davis to testify on his own behalf, (4) use exculpatory evidence and

beneficial rulings by the court, and (5) offer evidence of innocence. But these arguments were not raised in Davis's direct appeal. *See Davis*, 2024 WL 2814441, at *6. As it relates to trial counsel's failure to call a witness and challenge the state's witnesses, Davis conceded in his petition that these claims were known at the time of the direct appeal, but he argued that more evidence was required to properly raise the issue. His argument is unavailing.

"Decisions about which witnesses to call at trial and what information to present to the jury are questions of trial strategy that lie within the discretion of trial counsel." *Leake*, 737 N.W.2d at 539. As a reviewing court, we generally will not second guess the trial-strategy decision of which witnesses to call. *See id.*

Davis also argues that his trial counsel failed to adequately prepare him to testify at trial. According to Davis, this was due to "inattention" and "neglect," and he asserts that his trial counsel "neglected to even inform [him] of the upcoming trial."

The district court concluded that this claim was known, or should have been known, to Davis at the time of the direct appeal, but because he did not raise it then, it declined to consider it on a petition for postconviction relief. But even if it was not *Knaffla*-barred, the district court concluded that Davis "knowingly and intelligently waived his right to testify in his own defense." This is supported by the record. In the waiver of his right to testify at trial, Davis stated that his trial counsel informed him of his rights and

responsibilities, that he understood the consequences of not testifying, and that he was thinking clearly.[3]

In short, Davis's assertions of ineffective assistance of trial counsel were known to him at the time of his direct appeal, but because he failed to raise them, they are barred by *Knaffla*.

## B. Ineffective Assistance of Appellate Counsel

Davis next argues that he received ineffective assistance of appellate counsel because appellate counsel prevented Davis from contributing to his own appeal, failed to call a witness, failed to develop the record, failed to argue prosecutorial misconduct, and failed to challenge the district court's sentencing order. We address each argument in turn.

### 1. Preventing Davis's Contribution to his own Appeal

In his petition, Davis asserted that appellate counsel prevented him from contributing to his own appeal. He states that he sent appellate counsel a 27-page letter "detailing all of the issues [he] could think of that he wanted to be addressed in the direct appeal." He sent another letter addressing issues relating to the sentencing order. Davis contends that appellate counsel did not respond to any of his letters, did not provide a copy of the trial transcripts, and did not send a copy of the appellate brief before filing. The

---

[3] In his ineffective-assistance-of-trial-counsel argument, Davis seems to also argue that his appellate counsel was ineffective for failing to raise this argument. We disagree. Davis's appellate counsel had no obligation to raise this argument on appeal simply because Davis wished him to do so. *See Zornes v. State*, 880 N.W.2d 363, 371 (Minn. 2016) (stating appellate counsel "has no duty to raise all possible issues, and may choose to present only the most meritorious claims to the court"); *see also Wright v. State*, 765 N.W.2d 85, 91 (Minn. 2009) ("Counsel does not act unreasonably by not asserting claims that counsel could have legitimately concluded would not prevail.").

district court determined that under *Strickland*, Davis failed "to show that there [was] a reasonable probability that, but for counsel's alleged errors, the outcome of the appeal would have been different." The district court did not err.

As previously stated, appellate counsel is not required to "raise all possible claims on direct appeal, and a claim need not be raised if appellate counsel could have legitimately concluded that [it] would not [prevail]." *Leake*, 737 N.W.2d at 536 (quotation omitted). Accordingly, appellate counsel was not obligated to advance every argument at Davis's insistence.

### 2. Failing to Call a Witness

Davis also argues that his appellate counsel rendered ineffective assistance of counsel because he failed to raise an issue regarding trial counsel's failure to call a particular witness. In his petition, Davis contended that he told appellate counsel "everything th[e] witness could have testified to and why that witness was so necessary to the defense." The reason why appellate counsel did not raise the issue, according to Davis, was because "it was not part of the trial record, and so [a]ppellate [c]ounsel thought that information [was] off-limits to him."

The district court relied on this court's opinion affirming Davis's convictions, stating, "The Court of Appeals found that trial counsel's performance was within the objectively reasonable standard and specifically addressed the alleged failure to call a witness. Therefore, the court will not address that issue again." On appeal, Davis claims that the district court failed to consider the merits of his arguments. We are not convinced.

10

"Decisions about which witnesses to call at trial and what information to present to the jury are questions of trial strategy that lie within the discretion of trial counsel." *Leake*, 737 N.W.2d at 539; *see also Anderson v. State*, 830 N.W.2d 1, 13 (Minn. 2013) (noting that the decision to call exculpatory witnesses falls within trial strategy and is not generally reviewable on appeal); *Scruggs v. State*, 484 N.W.2d 21, 26-27 (Minn. 1992) (finding no merit in the claim that a defendant received ineffective assistance of counsel because trial counsel failed to call three potential defense witnesses). In his principal brief and petition, Davis does not explain what the witness would have testified to, or how that witness would have changed the outcome of his trial.

On this record, Davis does not show how appellate counsel's failure to argue the issue of trial counsel's failure to call a particular witness was below the objective standard of reasonableness under *Strickland*. The district court did not abuse its discretion.

### 3. Failing to Develop the Record

Davis's argument that his appellate counsel failed to develop the record relates to the argument in his first appeal that trial counsel failed to conduct a pretrial interview with D.T.

Matters of trial strategy "lie within the discretion of trial counsel and will not be second-guessed by appellate courts." *Leake*, 737 N.W.2d at 536; *see also Zumberge v. State*, 937 N.W.2d 406, 414 (Minn. 2019). Matters of trial strategy include which witnesses to call at trial and what information to present to the jury. *Allwine v. State*, 994 N.W.2d 528, 538-39 (Minn. 2023). The Minnesota Supreme Court has "cautioned against second-guessing decisions of trial counsel in hindsight simply because of an unfavorable

11

result to a defendant." *Id*. at 538. Generally, we will not review an attorney's investigation into a particular defense because it is considered trial strategy. *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004). However, an attorney's conduct in not investigating a defense may constitute unreasonable representation if the failure was due to "inattention or neglect." *Swaney v. State*, 882 N.W.2d 207, 218 (Minn. 2016). Thus, if under the circumstances, the attorney gave due consideration and reasonably declined to conduct further investigation, then a decision not to further investigate is objectively reasonable. *See id.*

In his direct appeal, Davis argued that his trial counsel, as part of its defense strategy, should have investigated "when D.T. learned that Davis was a registered sex offender." *Davis*, 2024 WL 2814441, at *6. This court rejected Davis's argument, concluding that trial counsel's decision not to conduct a pretrial interview with D.T. was not attributed to "inattention or neglect." *Id.* at *6. This court determined that Davis's trial counsel attempted to investigate further by moving to compel the state to allow him to conduct a pretrial interview, but the district court denied the motion. *Id.* Therefore, Davis's trial counsel's conduct in not investigating further did not fall below an objective standard of reasonableness.

In his petition, Davis argued that appellate counsel raised the wrong argument. According to Davis, rather than arguing "*when*" D.T. learned of Davis's sex-offender status, appellate counsel should have argued "*how*" D.T. learned of his status. This argument is not persuasive.

First, Davis does not show how his appellate counsel's performance fell below the objective standard of reasonableness or how he was prejudiced. As it relates to D.T.

12

learning of Davis's sex-offender status, it is not apparent that the "when vs. how" distinction would have affected the verdict. Second, even if we assume that his appellate counsel did raise the specific argument that Davis desired—the how—it is unlikely that this court would have considered the argument because to do so would have required reliance on evidence outside the appellate record. *See* Minn. R. Civ. App. P. 110.01 ("The documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."); *Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988) (stating appellate courts "may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below.").

### 4. Failing to Argue Prosecutorial Misconduct

Davis next argues that his appellate counsel was ineffective because he failed to raise 26 allegations of prosecutorial misconduct. He generally claims that the prosecutor vouched for D.T.'s credibility, mischaracterized the evidence, and made arguments unsupported by the record evidence.

Davis's allegations of prosecutorial misconduct were unobjected-to at trial. When the defendant fails to object during trial, prosecutorial misconduct is reviewed under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Under this standard, Davis must show (1) an error, (2) that is plain, and (3) that affects his substantial rights. *Id.* Davis carries the burden of establishing error that is plain, but upon doing so, the burden shifts to the state to prove that there is no reasonable likelihood that the absence of the misconduct would have had a significant effect on the jury's verdict. *Id.*

13

"A prosecutor engages in prosecutorial misconduct when he violates clear or established standards of conduct . . . by a district court, or clear commands in this state's case law." *State v. McCray*, 753 N.W.2d 746, 751 (Minn. 2008) (quotation omitted).

Here, Davis does not show how any of the prosecutor's remarks constituted plain error or how they affected his substantial rights. He claims that several of the prosecutor's statements during closing argument were not true, but he pointed to no record evidence in support. For example, in his petition, Davis claimed that the prosecutor's "major argument" during closing was when he stated:

> Under the guise of being a mentor is how Mr. Davis gained access to [D.T.]. And there's even more of that; in fact, it's ***very specific***. Because remember, aside from the other presents, aside from everything that he did with this child and for this child, bought him a cell phone that his parents didn't know about. Counsel is simply incorrect about the data in making phone calls. Both [D.T.] and Captain Brumfield corrected him on that. He's wrong on that.
> But ***most importantly***, there was one gift and one present and ***the timing of that is incredibly, incredibly important*** and indicative of how Mr. Davis had used his position of authority and abused that relationship with this child.

(Emphasis added.)

Davis described this statement as the prosecutor's "most egregious lie and misconduct." In his principal brief, Davis takes issue with the prosecutor's use of the phrases, "very specific," "most importantly," and "the timing of that is incredibly, incredibly important" because they "were used to convince the jury" that certain evidence was critical for a conviction.

14

But prosecutors are permitted to use "dramatic devices" and argue in a "persuasive fashion" to "make reasonable inferences from the record." *State v. Rucker*, 752 N.W.2d 538, 552 (Minn. App. 2008), *rev. denied* (Minn. Sept. 23, 2008).  Indeed, the supreme court has stated that "[a] prosecutor's closing argument need not be colorless, so long as it is based on the evidence or reasonable inferences from that evidence." *State v. Jones*, 753 N.W.2d 677, 691-92 (Minn. 2008).

The prosecutor's closing argument referenced evidence produced at trial and relied on the reasonable inferences from that evidence.  While Davis may disagree with many of the prosecutor's remarks in closing argument, he has not shown that the prosecutor committed plain error or how the alleged error affected his substantial rights.  Because Davis provides no legal support for his argument and has failed to demonstrate any misconduct, the postconviction court did not abuse its discretion in summarily denying Davis's prosecutorial-misconduct claim.

### 5.    Failing to Challenge Sentencing Order

Davis alleges that his appellate counsel was ineffective by failing to challenge the district court's sentencing order, specifically regarding how the district court calculated his criminal-history score.  This argument is unpersuasive.

Davis's appellate counsel challenged the district court's sentencing determination, arguing that Davis's two Utah convictions should not have been counted as separate convictions because they arose from the same behavioral incident.  *See Davis*, 2024 WL 2814441, at *8.  This court determined that "Davis pleaded guilty to two separate offenses

15

for two separate instances of criminal sexual conduct committed against the same victim, which took place in two different years—June 2005 and 2004. *Id.* at *9.

In his postconviction relief petition, Davis conclusory mentions that he received ineffective assistance of appellate counsel because he "chose to make an argument that was known to be ineffective (since trial counsel already tried it)." But he does not identify what arguments appellate counsel should have but did not make, or how they would have made a difference. The postconviction court rejected this argument, reasoning that Davis "failed to show how the outcome of the appeal would have been different under different representation." Davis fails to show why appellate counsel's sentencing argument on direct appeal was objectively unreasonable or would have changed the outcome of his appeal.

In sum, Davis has not alleged facts that show that his appellate counsel's performance was objectively unreasonable or that the asserted errors by appellate counsel's performance could reasonably have affected the outcome. The petition and record therefore conclusively show that Davis is not entitled to relief on this claim, and the district court did not abuse its discretion by summarily denying the claim. *See* Minn. Stat. § 590.04, subd. 1 (2024).

### 6. Failing to "Liberally Construe" the Petition for Postconviction Relief.

Davis lastly argues that the district court abused its discretion by failing to "liberally construe" his petition for postconviction relief. He contends that the district court did "everything in [its] power to minimize, misconstrue, ignore, and dispose of the petition." This argument lacks merit.

16

"In determining whether an evidentiary hearing is required, a postconviction court considers the facts alleged in the petition as true and construes them in the light most favorable to the petitioner." *Brown v. State*, 895 N.W.2d 612, 618 (Minn. 2017). Moreover, the petitioner must provide "more than argumentative assertions without factual support." *Id.* (quotation omitted).

Davis does not show how the district court minimized, misconstrued, or ignored his petition. Because the state did not file a response, it is not clear what or how the district court is "liberally construing" anything in favor of the state.

To this end, Davis contends that the state's failure to file a response to his petition for postconviction relief "interfered" with the adversarial process and his due-process rights. He reasons that because the state never submitted a response, the district court "volunteer[ed] arguments on behalf of the state and then decide[d] in the state's favor." We are not persuaded.

Davis does not explain how he was prejudiced by the absence of the state's decision not to file a response. Despite his assertion that the district court "volunteered" arguments on behalf of the state, the district court simply evaluated his petition under the applicable standards of review.

## II. The postconviction court did not abuse its discretion by denying Davis's postconviction petition without an evidentiary hearing.

A postconviction court must hold an evidentiary hearing on a petition for postconviction relief "[u]nless the petition, files, and record from the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1;

*see also Chavez-Nelson v. State*, 948 N.W.2d 665, 671 (Minn. 2020) ("A district court need not hold an evidentiary hearing when the petitioner alleges facts that, even if true, are legally insufficient to entitle him to the requested relief."). "The postconviction court must hold an evidentiary hearing to resolve factual disputes that are material to determining the legal issues raised in the postconviction petition when those factual disputes were not resolved in the proceedings resulting in a conviction." *Thoresen v. State*, 965 N.W.2d 295, 303 (Minn. 2021). However, "the factual dispute must be material." *Id.* When determining whether the petitioner is entitled to an evidentiary hearing, the postconviction court is required to consider the facts alleged in the petition as true and construe them in the light most favorable to the petitioner. *Henderson v. State*, 906 N.W.2d 501, 507 (Minn. 2018). "[T]he burden is on a petitioner to show facts entitling the petitioner to relief." *Allwine*, 994 N.W.2d at 541. "We review the ultimate decision by the postconviction court to grant or deny an evidentiary hearing for an abuse of discretion." *Caldwell v. State*, 853 N.W.2d 766, 770 (Minn. 2014).

To be entitled to an evidentiary hearing, Davis must allege such facts that, "if proved by a fair preponderance of the evidence," would entitle him to the requested relief. *Chavez-Nelson*, 948 N.W.2d at 671 (quotation omitted). But the record supports the postconviction court's denial of Davis's request for a hearing because even if Davis's allegations were proven by a fair preponderance of the evidence, he has not demonstrated that he is entitled to his requested relief. Accordingly, the district court properly denied Davis's request for an evidentiary hearing.

18

In sum, Davis's ineffective-assistance-of-trial-counsel claims are barred by *Knaffla* because the issues were known, or should have been known, to him at the time of his direct appeal. And his postconviction claims of ineffective assistance of appellate counsel are largely based on ineffective-assistance-of-trial-counsel claims that were rejected by this court in his first appeal. *See Davis*, 2024 WL 2814441, at *5-9. Because the postconviction court did not abuse its discretion in summarily denying Davis's postconviction claims, we affirm.

**Affirmed.**